**UNITED STATES, Appellee,**

v.

**Private First Class Annetha L. COWAN, 282–78–4059, United States Army, Appellant.**

**ACMR 9002323.**

U.S. Army Court of Military Review.

10 June 1991.

For Appellant: Lieutenant Colonel Russell S. Estey, JAGC, Captain Robin N. Swope, JAGC (on brief).

For Appellee: Colonel Alfred F. Arquilla, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Major Maria C. Fernandez, JAGC, Captain Robert J. Walters, JAGC (on brief).

Before NAUGHTON, GRAVELLE and JOHNSTON, Appellate Military Judges.

## OPINION OF THE COURT

NAUGHTON, Senior Judge:

The appellant was tried by a military judge sitting as a general court-martial at Fort Hood, Texas. Pursuant to a pretrial agreement, the appellant was convicted of larceny, three specifications of forgery, and two specifications of false swearing, in violation of Articles 121, 123, and 134, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 921, 923, and 934 (1982), respectively. Her sentence included a bad-conduct discharge, confinement for fifteen months, forfeiture of all pay and allowances, and reduction to Private E1. The convening authority approved the sentence, but suspended for one year confinement in excess of six months and forfeitures in excess of $724.20. The convening authority specified that the suspension of forfeitures was contingent upon: (1) the initiation of an allotment payable to the appellant's sister in the amount of $278.40 for the benefit of the appellant's then six-year-old daughter; and (2) the maintenance of the allotment during the time the appellant is entitled to receive pay and allowances.

■ Although appellate defense counsel submitted this case without alleging error, we specified the following issue:

WHETHER THE CONVENING AUTHORITY HAS THE AUTHORITY, UNDER THE UNIFORM CODE OF MILITARY JUSTICE AND THE MANUAL FOR COURTS–MARTIAL, 1984, TO APPROVE A SENTENCE WHICH MAKES A SUSPENSION OF FORFEITURES CONTINGENT UPON APPELLANT INITIATING AND MAINTAINING AN

ALLOTMENT TO APPELLANT'S SIS-TER FOR THE BENEFIT OF APPEL-LANT'S DAUGHTER.

We have concluded that the conditions of suspension imposed on the appellant in this case do not exceed the powers granted to a convening authority under the UCMJ and the Manual for Courts–Martial, United States, 1984.

■ A convening authority may require as a condition of suspension the support of dependents. The convening authority's powers regarding conditions of suspension are also broad enough to include the naming of a recipient of the allotment. In other words, because the convening authority has the power to suspend forfeitures on condition the money be used to support the appellant's dependent, he has the power to require the money be directed specifically to the child's temporary guardian. We note that the Department of Defense Pay Manual provides, "[a]llotments ... may not be made payable to children under 16 years of age. They may be made payable to the children's guardian or custodian." Dep't of Defense, Military Pay and Allowances–Entitlements Manual, para. 60108 (9 March 1987). Here, the convening authority required that the then guardian of the child be named as that recipient, thus insuring that the money would go directly to the guardian of the appellant's child.

In the present case, the appellant asked for a method by which she could support her child while she was in confinement. The convening authority provided that method, complete with the safeguards that he thought necessary. In effect, he was permitting her to elect to do what the law requires of all soldiers: to support their dependents. See Army Reg. 608–99, Personal Affairs: Family Support, Child Custody, and Paternity (4 Nov. 1985). Accord-ingly, we find no violation of Articles 60 and 71, UCMJ, 10 U.S.C. §§ 860, 871, or of Rule for Court–Martial 1108(c), or of public policy in the convening authority's action.

By this opinion, we do not mean to encourage provisions of suspension such as that utilized in the case before us. We also share the strong reservations of our dissenting Brother that the condition on suspension in this case may present practical problems of interpretation [1] and potential problems of administration, especially if circumstances change regarding the temporary guardian of the appellant's child. [2] Although no issues of interpretation, or administration, or changed circumstances have come to our attention in this particular case, a real potential exists with provisions of this sort.

We have considered the assertion raised pursuant to United States v. Grostefon, 12 M.J. 431 (C.M.A.1982), and find it to be without merit.

The findings of guilty and the sentence are affirmed. [3]

Judge GRAVELLE concurs.

JOHNSTON, Judge, concurring in part and dissenting in part:

As a practical matter, the approach to this case taken by my Brothers is commendable. There are only limited legal precedents, however, to support their conclusions.

### I

My concerns are several:

a. Unlike federal judges, convening authorities lack a clear grant of statutory authority to impose conditions of suspension unrelated to additional offenses, misconduct, or conduct violative of good be-

---

1. In the case where such a condition on suspension is made a part of a negotiated plea, transforming the normal two-three page pretrial agreement into a multi-page government-like contract is plain and simple a bad idea, i.e., a court-martial is not a family court.

2. For example, who monitors the case to insure compliance with the intent of the convening authority? Who can or should modify the pro-vision if circumstances change? How will this be done?

3. Although total forfeitures were adjudged and approved, the amount forfeited totaled only $724.20 for one month because other forfeitures were suspended. We are unable to determine whether this was the intended result, but will enforce the suspension as written.

havior. *See Affronti v. United States*, 350 U.S. 79, 83, 76 S.Ct. 171, 173, 100 L.Ed. 62 (1955); *United States v. Lallande*, 46 C.M.R. 170, 175–179 (Duncan, J., dissenting).

b. Given the current state of the law, the suspension powers of a convening authority should not be compared with those of a federal judge.

c. Legal and practical problems abound when a military justice sentencing system is manipulated with conditions on suspension not related to the purposes of military sentencing: protection of society, punishment, rehabilitation, preservation of good order and discipline in the armed forces, and deterrence of the wrongdoer and others. Dep't of Army, Pam. 27–9, Military Judges' Benchbook, para. 2–59 (Cl, 15 Feb. 1985).

## II

### A. *Lack of a Clear Grant of Statutory Authority.*

I am satisfied that a convening authority does not possess the inherent authority to impose conditions on suspension for military probationers. Suspension of sentence, in full or in part, equates with "probation." *See Lallande*, 46 C.M.R. at 172. The Supreme Court has stated that the authority to permit probation "springs solely from legislative action." *Affronti*, 350 U.S. at 83, 76 S.Ct. at 173. Thus, the power of a convening authority to suspend sentences and impose conditions of suspension must be found in the UCMJ.

The UCMJ makes limited references to the convening authority's role in suspending the execution of a sentence and in vacating a suspension based on alleged violations of probation. Article 60(c), UCMJ, states in pertinent part:

(1) The authority under this section to modify the findings and sentence of a court-martial is a matter of command prerogative involving the sole discretion of the convening authority.

(2) ... The convening authority ... in his sole discretion, may ... suspend the sentence in whole or part.

Article 71(d), UCMJ, authorizes the convening authority to "suspend the execution of any sentence or part thereof, except a death sentence," but does not grant specific authority to impose conditions of suspension. Article 72, UCMJ, 10 U.S.C. § 872, specifies the procedures by which a suspension is vacated for a violation of the conditions of probation. Article 36, UCMJ, 10 U.S.C. § 836, provides that the President may prescribe procedures and rules of evidence, but not substantive law. *See United States v. Dickson*, 49 C.M.R. 614, 614 (A.C.M.R.1974) (Alley, J.).

While it is clear from the UCMJ that the convening authority has the "sole discretion" to decide whether to suspend a sentence, it is also apparent that the Code does not grant the convening authority the "sole discretion" to determine the conditions of suspension without regard to other provisions of law. The legislative history of Article 72, UCMJ, indicates that Congress did not intend for the Code provisions to be a grant of unlimited authority as to conditions of suspension. *See Uniform Code of Military Justice: Hearings on H.R. 2498 Before a Subcomm. of the Comm. on Armed Services House of Representatives*, 81st Cong., 1st Sess. 1208–09 (1949).

Rule for Courts–Martial 1108(c)(1) of the Manual states that the authority who suspends the execution of the sentence shall "[s]pecify in writing the conditions of the suspension ... [u]nless otherwise stated, an action suspending a sentence includes as a condition that the probationer not violate any punitive article of the Code." The Manual, however, does not further define those conditions of the suspension that a convening authority may lawfully impose. Article 36 merely gives the President the authority to define procedures for implementing conditions of probation, not the authority to establish the conditions themselves. Assuming, however, that the power to suspend execution of a sentence necessarily carries with it the right to impose some conditions, our task in this case should be to determine whether the requirement to create an allotment payable

**1044**

to a specific person is a permissible condition of suspension.

The Court of Military Appeals has interpreted Article 71, UCMJ, as empowering the convening authority to grant probation and to impose some conditions upon which probation may be terminated. *Lallande,* 46 C.M.R. at 170. While apparently accepting the Government's concession that the convening authority does not have "unbridled discretion" as to the kinds of condition he may impose, the Court concluded that *"some* conditions can properly be attached to a grant of probation by the convening authority." *Id.* at 172 (emphasis added).

In his dissenting opinion in *Lallande,* Judge Duncan argued that the legislative history of the applicable Code provisions indicates that the convening authority is limited in the exercise of his suspension powers to conditions involving additional offenses, misconduct, or conduct violative of good behavior. *Id.* at 175. I find his statutory analysis, logic, and citations to Supreme Court cases persuasive. Changes in the Manual since the *Lallande* opinion do not alter my perception of the correctness of Judge Duncan's analysis.

In a broadly sweeping statement not related directly to the facts at issue in *Lallande,* the Court stated that "the language of the Code and the Manual and the congressional hearings on the Code support the conclusion that, incident to the power to grant probation, the convening authority has power to impose at least the same conditions allowable to a judge in a federal civilian criminal court." *Id.* at 172–73. This broad pronouncement was unnecessary to the resolution of that case, and is contrary to the Supreme Court's analysis in *Affronti.* Thus, *Lallande* may be of only limited value in regard to the precise issue in the case at bar.

In *Lallande,* the Court approved three conditions on a suspension: continued good conduct, not associating with drug users or dealers, and submitting to searches. All three of these conditions were proposed and consented to by the accused and his counsel in an offer to plead guilty. *Lallande,* 46 C.M.R. at 173. The Court noted

that the conditions were "the exclusive product of his [the accused's] own, voluntary effort, not a response to a demand by the Government that they be accepted 'or else.' Nor does it appear that the accused obtained the conditions only at the price of surrendering a constitutional right that could affect his guilt or the legality of his sentence." *Id.*

While the *Lallande* opinion ostensibly addresses the power of a convening authority to impose conditions of suspension, the facts of the case concern conditions that were proposed by the accused in order to obtain a favorable sentence. I see profound distinctions between (1) the lawfulness of the terms of a pretrial agreement that an accused and his counsel propose and consent to in an offer to plead guilty, and (2) the conditions of suspension that a convening authority may impose as a matter of law. The former should be evaluated in terms of surrendering fundamental rights and violations of public policy. R.C.M. 705(c); *United States v. Hobart,* 22 M.J. 851 (A.F.C.M.R.1986). The latter should be upheld only if an appropriate statute contains a grant of authority. *Affronti,* 350 U.S. at 83, 76 S.Ct. at 173. A violation of the terms of a pretrial agreement by the accused permits the convening authority to void the agreement and to approve the *adjudged* sentence. Whereas, a violation of a condition of suspension may result in a vacation hearing under the provisions of Article 72, UCMJ, and imposition of the *approved* sentence. *Lallande* conceptually mixed these two distinct concepts as the accused bargained in the pretrial agreement for specific conditions of suspension.

B. *Invalid Comparison with the Authority of Federal Judges.*

Federal district judges had broad discretionary authority under the Federal Probation Act, 18 U.S.C. §§ 3651–3656 (1982) (repealed 1987), to impose conditions for probation "upon such terms and conditions as *the court* deems best." *Id.* at § 3651 (emphasis added); *see also United States v. Tolla,* 781 F.2d 29, 32 (2d Cir.1986) (Federal Probation Act gives judges "broad discre-

tion to decide which defendants merit probation and under what conditions they will serve their probation."). Among the standard conditions of parole imposed by federal district judges were conditions to the effect that "the parolee will support [his] legal dependents, if any, to best of [his] ability." T. Hutchison & D. Yellen, Federal Sentencing Law and Practice § 5B1.4(a)(4) (1989) [hereinafter Hutchison & Yellen]. As noted above, convening authorities do not have similarly specific statutes upon which to rely for their authority.

Title II of the Comprehensive Crime Control Act of 1984 [4] dramatically changed federal sentencing and probation provisions. Specifically, under the Sentencing Reform Act of 1984 [5], which became effective on 1 November 1987, probation is treated as a sentence in its own right rather than as a suspension of a sentence. *See* Project, Nineteenth Annual Review of Criminal Procedure: United States Supreme Court and Courts of Appeals 1988–1989, 78 Geo.L.J. 699, 1311 (1990) [hereinafter Project: Criminal Procedure]. Probation, depending upon the number and severity of its restrictions, is simply "one point (or more accurately, one set of points) on a continuum of possible punishments ranging from solitary confinement in a maximum security facility to a few hours of mandatory community service." *Griffin v. Wisconsin,* 483 U.S. 868, 874, 107 S.Ct. 3164, 3168, 97 L.Ed.2d 709 (1987).

The new law also allows federal courts somewhat less discretion in imposing conditions of probation than previously allowed under the Federal Probation Act. *See* Project: Criminal Procedure at 1312. The conditions imposed must be reasonably related to the nature and circumstances of the offense, the history and characteristics of the offender, and the four purposes of the federal sentencing system: (1) to reflect the seriousness of the offense, to promote respect for law, and provide just punishment for the offense (*i.e.,* the "Just

Deserts" concept); (2) to deter others from committing the offense; (3) to protect the public from further crimes of the defendant; and, (4) to provide rehabilitation in training and treatment programs. 18 U.S.C. § 3562 (1982 & Supp. III 1986) (refers to factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable). Regardless of these limitations, a federal district judge continues to have a specific grant of authority to impose a condition on probation that requires the defendant to support his dependents to the best of his ability. 18 U.S.C. § 3563(b)(1).

Given the limitation of probation authority delineated by the Supreme Court in *Affronti* and the differences between the former and the present federal probation statutes, I am not convinced that the purported comparison by the majority in *Lallande* between the probation powers of federal judges and the suspension powers of convening authorities has any further validity. In light of the current federal changes that place probation on the *continuum* of available punishments, I doubt that logical comparison of a federal judge's authority to impose conditions on probation can be made with a convening authority's authority to impose conditions on *suspension* of punishment.

### C. *Legal and Practical Problems.*

The convening authority in this case decided to suspend a portion of the approved forfeitures on condition that the appellant initiate and maintain an allotment payable to her sister for the support of her daughter. These provisions are more specific than the usual federal requirement to provide support for dependents to the best of the probationer's ability.

Requiring that an allotment be payable to a named recipient does not take into account the possibility of changed financial status (*e.g.,* a windfall that makes support payments unnecessary), changed circumstances (*e.g.,* misconduct or mismanage-

---

4. Public L. No. 98–473, 98 Stat.1976 (1984) (codified at scattered sections of the U.S.C.).

5. The Sentencing Reform Act of 1984 (to be codified at scattered sections of 18 and 28

U.S.C.) is Chapter II of the Comprehensive Crime Control Act of 1984, which was passed as Title II of H.J.Res. 648, Pub.L. No. 98–473.

ment of assets by the sister), or other unforeseen contingencies (*e.g.*, illness, death, etc.) that might defeat the real purpose of providing funds for the care of the appellant's daughter. If a prudent review of all the circumstances caused the appellant to refrain from starting the allotment or to terminate it on short notice, the terms of the condition of suspension would require vacation of the suspension. In effect, the condition of suspension imposed by the convening authority, however benevolent the intent, impermissibly intrudes into the mother-daughter relationship during a difficult time and interferes with property rights.

I also question the wisdom of imposing a condition mandating creation of a support allotment in a case where the approved sentence includes substantial forfeitures and a punitive discharge. For example, if a soldier fails to initiate or maintain a support allotment he/she negotiated for in a pretrial agreement and thereby violates a condition of suspension, the vacation of the suspension results in forfeiture of the funds that might have gone for support. In any event, once appellate review of a case is completed and the punitive discharge is executed, a no-pay/no-allowances status results.

I realize that this court has recognized the validity of various conditions of suspension. We have done so, however, without questioning their basis in law. *See, e.g., United States v. Hallums*, 26 M.J. 838 (A.C.M.R.1988) (where accused forcibly sodomized his daughter, the court implied that it would approve a condition of suspension that required the accused and his family to successfully complete a counselling program); *United States v. Myrick*, 24 M.J. 792 (A.C.M.R.1987) (in a vacation of suspension case, the court examined the notice of a condition of suspension given the accused that required him to "enter and complete rehabilitation counselling with a chaplain"); *United States v. Rogers*, 49 C.M.R. 268 (A.C.M.R.1974) (the court approved a negotiated condition of suspension which required reimbursement of a larceny victim). Nor has this court, as evidenced by these opinions, questioned the practicali-

ty of the result sought to be achieved. What would qualify as an approved counselling program for a convicted child molester? Who decides? What constitutes "satisfactory completion" of such a program? When must reimbursement be made if it is included as a condition of suspension?

My Brothers and I have noted our unanimous concern with the unnecessary problems that may come from attempting to administer lawful but cumbersome conditions of suspension. If an accused included every possible lawful condition of suspension in the pretrial agreement negotiation process, the result could be a multi-page "contract" that would have to be examined at trial and administered thereafter.

For example, the federal probation system now includes thirteen "standard" conditions for probation, and an additional eleven conditions that are either recommended or required depending upon the circumstances of a case. Hutchison & Yellen, *supra*, at § 5B1.4 annot. n. 2. Twenty-one specific discretionary conditions are listed in 18 U.S.C. § 3563(b), including requiring the probationer to "satisfy such other conditions as the court may impose." 18 U.S.C. § 3563(b)(21) (1982 & Supp. V 1987). The practical difficulties of implementing these discretionary conditions will become obvious when convening authorities or their successors (*e.g.*, commanders of transfer points or Fort Leavenworth), attempt to ensure compliance with allotment provisions or to administer other conditions, such as meeting "other family responsibilities," working "conscientiously at suitable employment, or pursuing "conscientiously a course of study or vocational training." 18 U.S.C. § 3563(b)(1) and (5).

### III

In this case I would hold that the condition of suspension to initiate and maintain a support allotment to a specific person exceeds the suspension authority granted to the convening authority by the UCMJ. My proposed holding would caution staff judge advocates about the dangers of using con-

ditions of suspension as instruments for a social welfare system.