David P. SCHNEIDER, Petitioner,

v.

Herbert R. TILLERY, Respondent.

No. 94–3478–RDR.

United States District Court,
D. Kansas.

March 26, 1998.

David P. Schneider, Butner, NC, Pro se.

Jackie A. Rapstine, Office of United States Attorney, Topeka, KS, for Herbert R. Tillery, respondent.

## MEMORANDUM AND ORDER

ROGERS, Senior District Judge.

This matter is before the court on a petition for habeas corpus filed pursuant to 28 U.S.C. § 2241 by a military inmate formerly housed at the United States Disciplinary Barracks, Fort Leavenworth, Kansas. Petitioner brings this action following his conviction of attempted premeditated murder and conduct unbecoming an officer, namely, adultery and perjury. The respondent filed an Answer and Return (Doc. 6), and petitioner filed a traverse (Doc. 9). Having examined the record, the court enters the following order.

### Factual and Procedural Background

The relevant facts appear in *United States v. Schneider*, 38 M.J. 387, 389–90 (C.M.A. 1993):

In 1987, appellant moved to California with his wife and two children, pursuant to his assignment to the Lawrence Livermore National Laboratory. At the Laboratory, he worked with a woman named Paula, and by April 1989, their relationship had become sexual.

In 1989 appellant was assigned to attend the U.S. Army Command and General Staff College at Fort Leavenworth, Kansas, and moved with his family into government quarters there. In August 1989, he met with an insurance agent and purchased an additional $150,000 in life insurance coverage on his wife. He was the beneficiary of this policy, which had an effective date of October 1, 1989. That same summer, appellant sold the former family home in California and used the proceeds to purchase a home in Tracy, California; he convinced his wife that her name should not be on the deed. He then spent Labor Day weekend with Paula in California.

The incident out of which the specification of attempted murder arose occurred on October 20, 1989. That night, appellant's wife awoke with intense pain in her head and was pulled to a sitting position in her bed. She saw appellant, visibly shaken, standing next to the bed. The toilet tank lid from the bathroom lay broken on the floor near his feet. She felt a baseball-sized lump on her head, which was "oozing." She brushed small pieces of porcelain from her hair. He then assisted her to the bathroom, and she sat on the toilet. When she began shaking, he helped her to the bathroom floor and covered her with a quilt. Appellant told his wife, repeatedly, "You must have hit your head." Although appellant suggested taking her to a doctor, his wife wanted only to go back to bed. The next morning, he took her to the medical facility and there told medical personnel that Debbie was sleepwalking, picked up the toilet tank lid, tripped, and hit her head. Other evidence at trial, however, indicated that his wife had never walked in her sleep. [footnote omitted] Two weeks later, on November 4, appellant and his wife were to attend the Armor Ball. Appellant made arrangements for a "romantic" night at Embassy Suites Hotel. [footnote omitted]. At appellant's insistence, he and his wife left prior to the end of the ball in order to go to the hotel. Upon arriving, appellant learned that, although he had asked for an eighth-floor room when making reservations, he was given a room on the seventh floor instead. They nonetheless took the elevator to the eighth floor, where they were observed by

two 16–year–old girls. The girls saw appellant and his wife walk side by side down the hallway. One girl then saw appellant make vigorous hand movements in front of his wife as she faced him with her back to a rail overlooking an interior courtyard. The girl observed appellant put his left arm around his wife at the point where the rail met her back, put his right hand on her chest, and flip her over the rail. The wife fell some 70 or 80 feet, and hit a table on the atrium floor. The girl watched appellant look over the railing, say ("he didn't yell") "for someone to call an ambulance," then walk to the elevator, and walk back to the railing. He then walked back to the elevator and proceeded down. When he reached the atrium floor, appellant was cool and collected. His wife's pelvis was fractured in thirteen places; both left and right femurs were broken in several places; a bone penetrated her abdominal cavity, damaging her colon; and an ankle and several ribs were fractured.

On December 4, one month after the ball and two days after his wife returned home from the hospital, appellant told his wife that he did not love her any more and was getting a divorce. On December 5, he admitted to police that he had had an affair with Paula and that he loved her and hoped to marry her when his divorce was final.

Missouri state authorities charged petitioner with first-degree assault for the events at the hotel. Petitioner testified in the state court proceedings that he accidentally dropped his wife over the railing and did not intend to injure her. He was acquitted on this charge. After the state proceedings ended, military authorities brought charges of attempted premeditated murder, based on the toilet tank lid incident, and conduct unbecoming an officer.

Petitioner was tried by a general court-martial composed of officer members at Fort Leavenworth, Kansas, on September 28, October 15, and November 13–17, 1990. He was convicted of one specification of attempted murder and two specification of conduct unbecoming an officer.

Following the court-martial proceedings, petitioner was sentenced to dismissal, confinement for 23 years, and total forfeitures.

The convening authority approved the sentence but suspended forfeitures in excess of $400.00, with the suspended forfeitures to be paid to petitioner's ex-wife.

The Army Court of Military Review affirmed the findings and sentence, *United States v. Schneider,* 34 M.J. 639 (A.C.M.R. 1992); and the United States Court of Military appeals affirmed. *United States v. Schneider,* 38 M.J. 387 (C.M.A.1993), *cert. denied,* 511 U.S. 1106, 114 S.Ct. 2100, 128 L.Ed.2d 662 (1994).

### Discussion

Petitioner seeks habeas corpus relief on four grounds: first, the court-martial lacked jurisdiction due to the presence of a panel member who was junior in rank to him; second, the conviction of adultery violates due process because the government failed to establish that a crime was committed; third, the conviction of perjury violates due process because it was collaterally estopped by acquittal in the Missouri state courts; and fourth, the sentence violates the Tenth Amendment to the extent it imposes fines and payments beyond the terms of the civilian divorce decree.

### Standard of review

 A federal court has limited authority to review court-martial proceedings in habeas corpus. The scope of review is initially limited to determining whether the claims raised by the petitioner were given full and fair consideration by the military courts. *Lips v. Commandant, United States Disciplinary Barracks,* 997 F.2d 808 (10th Cir. 1993), *cert. denied,* 510 U.S. 1091, 114 S.Ct. 920, 127 L.Ed.2d 213 (1994). If the issues have been given full and fair consideration in the military courts, the district court should not reach the merits and should deny the petition. *Id.* When a military court decision has dealt fully and fairly with an allegation raised in the federal habeas petition, it is not open to the federal court to grant the writ by reassessing the evidentiary determinations. *Burns v. Wilson,* 346 U.S. 137, 142, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953).

In the *Lips* decision, the Tenth Circuit summarized the limited scope of review as follows:

> [I]f the military gave full and fair consideration to claims asserted in a federal habeas

corpus petition, the petition should be denied. Only when the military has not given a petitioner's claims full and fair consideration does the scope of review by the federal civil court expand.

. . . .

In *Dodson v. Zelez*, 917 F.2d 1250 (10th Cir.1990), we held that review by a federal district court of a military conviction is appropriate only if the following four conditions are met: (1) the asserted error is of substantial constitutional dimension; (2) the issue is one of law rather than of disputed fact already determined by the military tribunal; (3) there are no military considerations that warrant different treatment of constitutional claims; and (4) the military courts failed to give adequate consideration to the issues involved or failed to apply proper legal standards. *Lips*, 997 F.2d at 811.

■ Finally, if an issue is brought before the military court and is disposed of, even summarily, the federal habeas court will find that the issue has been given full and fair consideration. *Watson v. McCotter*, 782 F.2d 143, 145 (10th Cir.), *cert. denied*, 476 U.S. 1184, 106 S.Ct. 2921, 91 L.Ed.2d 549 (1986). If an issue was not raised before the military courts, the federal habeas court will deem that issue waived and not subject to review. *Id.*

### Composition of court-martial

■ Petitioner first seeks relief on the ground the court-martial lacked jurisdiction over him because an officer who was junior-in-rank to him participated in deliberations.

On November 13, 1990, defense counsel received information on newly-appointed members to the court-martial panel, including the members' Officer Records Briefs (ORB) and questionnaires. While the ORB for one member, Major Margaret Ann Horrell showed a date-of-rank to Major of April 1, 1989, the questionnaire she completed showed a date of rank of April 1, 1990. Defense counsel noticed this discrepancy during deliberations but did not notify the court at that time. The members returned a verdict that evening, but only on the follow-

ing morning did defense counsel notify the court of the discrepancy. The correct date of Major Horrell's date-of-rank to Major is March 1, 1990, and she is junior in date-of-rank to petitioner.

The military judge ruled that petitioner had waived a challenge for cause to Major Horrell's participation in the deliberations by failing to act immediately upon the discovery of the discrepancy, but the judge granted a challenge to Major Horrell's further participation in the proceedings.

In considering this issue, the Court of Military Appeals found that the error in question was not jurisdictional. The C.M.A. noted that Article 25(a) of the Uniform Code of Military Justice, 10 U.S.C. § 825(a), establishes that "[a]ny commissioned officer on active duty is eligible to serve on all courts-martial" and that the seniority requirement historically served to remove any temptation by lower-ranking members to advance by convicting a senior officer. The court also noted that Major Horrell was not subject to such pressure as she had no reason to know she was junior to petitioner. *U.S. v. Schneider*, 38 M.J. at 394.

The court concludes this claim was fully and fairly considered by the military courts and finds no reason to disturb the result. It is clear that Article 25(a) permits service by any commissioned officer, regardless of seniority, and it is likewise clear defense counsel failed to timely present the information concerning Major Horrell's date of rank to the court. The court finds the military courts gave appropriate consideration to this claim.

### Commission of adultery

■ Petitioner challenges his conviction of adultery on the ground the government's evidence did not establish an act of sexual intercourse between him and Paula Blake. The Court of Military Appeals' decision reflects that both petitioner and Blake testified in the state court proceedings that they had an affair. Petitioner's prior testimony was admitted during the court-martial proceedings as an admission and Blake's testimony was admitted by stipulation of the parties. Blake's testimony squarely acknowledged the sexual nature of the relationship.[1] The

---

1. In relevant part, Blake's testimony was as follows:

Court of Military Appeals found there was sufficient evidence in the record to support the determinations of the panel members, and this court concludes the issue was fully and fairly considered. The record clearly contains testimony, which, if accepted by the trier of fact, would support a conviction of adultery. This court will not reweigh the evidence before the panel members. *Burns,* 346 U.S. at 142.

### Conviction of perjury

Petitioner next contends his conviction for perjury is barred by collateral estoppel. Because he was acquitted in state court of charges of assault, petitioner contends his prosecution for giving false testimony was improper. The Court of Military Appeals considered this issue and found there was sufficient evidence for the panel members to find petitioner gave false testimony. It also found that because neither the Double Jeopardy Clause nor the doctrine of collateral estoppel bars prosecutions by a separate sovereign, and military authorities therefore could have elected to reprosecute petitioner for first-degree assault, there was no error in his prosecution for the offense of conduct unbecoming an officer. *U.S. v. Schneider,* 38 M.J. at 391–92.

■ This analysis is correct. In *United States v. Cuellar,* 27 M.J. 50 (C.M.A.1988), *cert. denied,* 493 U.S. 811, 110 S.Ct. 54, 107 L.Ed.2d 23 (1989), the C.M.A. stated, "It is well established that, absent some statute to the contrary, [fn omitted], an acquittal in a criminal trial conducted by one sovereign is not binding in a criminal trial conducted by a different sovereign." 27 M.J. at 54–55. The state court acquittal on the charge of assault thus did not bar the military prosecution for perjury. The court concludes this issue was given thorough consideration by the military courts and that the claim is without merit.

### Modification of forfeitures

Petitioner's final claim for relief is that the suspension of forfeitures authorized by the convening authority violates the Tenth

Amendment by exceeding the terms directed in the civilian divorce decree.

The final divorce decree entered by the state court directed petitioner to pay 65% of his income in monthly payments for support and maintenance. The sentence imposed by the court-martial included a provision of total forfeitures; however, the convening authority suspended so much of the forfeiture of pay and allowances as exceeded $400.00 per month, provided petitioner "continuously claim on an Internal Revenue Service Form W–4, so long as he may legitimately do so, that he is single with two dependents, and that he initiate and maintain a monthly military pay allotment to be paid directly to [petitioner's former spouse] in the amount of $2500.00." 38 M.J. at 394.

■ The Tenth Amendment states "the powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X. The federal courts have no original jurisdiction over divorce; divorce proceedings are matters for the state courts.

■ In contrast, "[t]he suspension of forfeitures in lieu of an allotment is a clemency matter within the discretion of the convening authority." *United States v. Cowan,* 34 M.J. 258, 259 (C.M.A.1992). Because "[p]ay and allowances forfeited as a result of a court-martial sentence revert to the United States," *United States v. Schneider,* 38 M.J. 387, 395 (C.M.A.1993), the disposition of the funds to petitioner's former spouse essentially flows from the United States to her. This action did not make the petitioner's obligations more onerous than those imposed by the state divorce decree, and the court rejects petitioner's claim of a Tenth Amendment violation.

### Conclusion

For the foregoing reasons, the court concludes petitioner's claims do not entitle him to relief.

Q. You began having a relationship with Mr. Schneider, after you met him [at the Livermore Laboratory], is that correct?
A. Well, we were friends as soon as we met, right.

Q. That relationship became a sexual relationship in April of 1989, is that correct?
A. That's correct. (Doc. 8, Attach.2, Tr. p. 230.)

IT IS THEREFORE ORDERED the petition for habeas corpus is dismissed and all relief is denied.

IT IS SO ORDERED.